United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued September 15, 1999 Decided December 21, 1999 

 No. 98-1408

 PanAmSat Corporation, 
 Petitioner

 v.

 Federal Communications Commission and 
 United States of America, 
 Respondents

 BellSouth Wireless, Inc., 
 Intervenor

 On Petition for Review of an Order of the 
 Federal Communications Commission

 Henry Goldberg argued the cause for petitioner. With him 
on the briefs were Joseph A. Godles and W. Kenneth Ferree.

 C. Grey Pash, Jr., Counsel, Federal Communications Com-
mission, argued the cause for respondent. With him on the 
brief were Christopher J. Wright, General Counsel, Daniel 
M. Armstrong, Associate General Counsel, Joel I. Klein, 
Assistant Attorney General, U.S. Department of Justice, 
Catherine G. O'Sullivan and Nancy C. Garrison, Attorneys.

 Before: Williams, Rogers and Garland, Circuit Judges.

 Opinion for the Court filed by Circuit Judge Williams.

 Williams, Circuit Judge: Congress requires that the Fed-
eral Communications Commission collect fees to finance its 
regulatory activities. In 1985, as part of the Consolidated 
Omnibus Budget Reconciliation Act, it amended the Commu-
nications Act of 1934 by adding a section 8, 47 U.S.C. s 158, 
which created a schedule of "application fees" for regulatees 
to pay to the FCC. In 1993, again as part of the Omnibus 
Budget Reconciliation Act, it expanded FCC fee collection by 
adding a section 9, which mandated the collection of "regula-
tory fees" to recover the costs of "enforcement activities, 
policy and rulemaking activities, user information services, 
and international activities." 47 U.S.C. s 159(a)(1).

 PanAmSat Corporation, an operator of satellites for tele-
communications purposes, petitions for review of two separate 
aspects of the FCC's 1998 assessment of regulatory fees. 
See Assessment and Collection of Regulatory Fees for Fiscal 
Year 1998, 13 FCC Rcd 19820 (1998) ("1998 Order"). Both 
challenges relate to the Commission's interpretation of s 9. 
In the first PanAmSat attacks the FCC's exemption of Com-
sat Corporation from "space station fees," 47 U.S.C. s 159(g), 
for satellites Comsat operates as part of the Intelsat and 
Inmarsat systems. In the second it challenges the FCC's 
assessment of fees on PanAmSat for "international circuits." 
Id.

 Both challenges confront a jurisdictional problem. Al-
though PanAmSat attacks a 1998 Order, the decisions it 
complains of are identical to the formulations reached by the 
Commission in its 1997 Order. See Assessment and Collec-

tion of Regulatory Fees for Fiscal Year 1997, 12 FCC Rcd 
17161, 17187-89 (1997) ("1997 Order"). The statute authoriz-
ing judicial review states that petitions for review must be 
filed within 60 days of the final order, see 28 U.S.C. s 2344; 
PanAmSat's petition is timely for the 1998 Order but not for 
that of 1997. We assume without deciding that the clock does 
not automatically start fresh on each new annual iteration of 
an order that imposes burdens with respect to a specific year. 
Even with that assumption, PanAmSat has brought itself 
within standard exceptions to any inference of preclusion to 
be drawn from the 60-day limit. See Independent Comm. 
Bankers of Am. v. Board of Governors of the Fed. Reserve 
Sys., 1999 U.S. App. LEXIS 28145, at *19 (D.C. Cir. Nov. 2, 
1999) (noting that typical statutory review periods rarely 
contain an "explicit bar" to challenges brought after the time 
limit). Because the exceptions are different, we address the 
jurisdictional issue separately for each substantive challenge.

 Space Station Fees for Comsat

 Comsat is a private corporation formed pursuant to the 
Communications Satellite Act of 1962. See 47 U.S.C. s 701 
et seq. At Comsat's creation Congress designated it the 
United States's sole representative and signatory to the In-
ternational Telecommunications Satellite Organization ("Intel-
sat"), 47 U.S.C. s 731, and later the International Maritime 
Satellite Organization ("Inmarsat"), 47 U.S.C. s 752; see also 
Comsat Corp. v. FCC, 114 F.3d 223, 225 (D.C. Cir. 1997). 
These organizations own satellites that are used by signato-
ries, such as Comsat, to provide international communica-
tions. Comsat provides such services as a common carrier 
and is "fully subject to the provisions of title II and title III 
of [the Communications] Act," 47 U.S.C. s 741. Title II 
governs regulation of common carriers, 47 U.S.C. s 201 et 
seq.; Title III governs radio communication, 47 U.S.C. s 301 
et seq. To participate in the launch of an Intelsat satellite, 
for example, Comsat must seek authority from the FCC 
pursuant to 47 U.S.C. s 309. See, e.g., In the Matter of 
Comsat Corporation Application for authority to participate 

in a program for the construction of up to four Intelsat VIII 
satellites and to provide its authorized Intelsat services via 
these facilities, 12 FCC Rcd 15971 (1997) ("Authority to 
Participate").

 Until 1985 the FCC required (with limited exceptions) that 
international fixed satellite services be provided via the Intel-
sat system. In that year it authorized provision of separate 
international satellite services; in 1988 PanAmSat became the 
first U.S. provider of a separate system and it now operates 
its own worldwide fleet of satellites. Unlike Comsat, PanAm-
Sat operates as a non-common carrier.

 Both Comsat and PanAmSat pay s 8 application fees for 
space stations. 47 U.S.C. s 158. Such fees apply to those 
who "launch and operate" space stations. 47 U.S.C. s 158(g) 
(Schedule of Application Fees, Common Carrier Services 
(16)(b)). PanAmSat launches and operates its own satellites, 
so it obviously must pay the fees; in 1987 the FCC concluded 
that Comsat must do so as well insofar as it "participate[s] in 
the construction, or in the launch and operation, of [a station 
in the Intelsat or Inmarsat system]." In the Matter of 
Establishment of a Fee Collection Program to Implement the 
Provisions of the Consolidated Omnibus Budget Reconcilia-
tion Act of 1985, 2 FCC Rcd 947, 974 & n.226 (1987) ("1987 
Order"). But when Congress established regulatory fees for 
space stations in 1993 under s 9, the FCC concluded that 
Comsat was exempt from such fees for its Intelsat and 
Inmarsat space stations, even though companies like PanAm-
Sat were required to pay the new s 9 fees. See 47 U.S.C. 
s 159(g) (Schedule of Regulatory Fees, Common Carrier 
Bureau); Assessment and Collection of Regulatory Fees for 
Fiscal Year 1995, 10 FCC Rcd 13512 (1995) ("1995 Order"). 
Comsat's exemption from these fees persists through the 
1998 Order.

 PanAmSat says that its challenge to the Comsat exemption 
is timely for two reasons. It argues first that an intervening 
decision of this circuit, Comsat Corp. v. FCC, 114 F.3d 223 
(D.C. Cir. 1997), reopened the issue, and second that the 
FCC's 1997 decision, although deciding the issue for 1997, 
explicitly kept the issue open for the future.

 The FCC exempted Comsat from space station fees back in 
1995, but in 1996 it noted that Comsat was not being charged 
for the regulatory costs it imposed on the FCC.1 This 
prompted the agency to adopt a "signatory fee" that applied 
to Comsat as the United States's signatory in organizations 
like Intelsat. See Comsat, 114 F.3d at 225-26. Comsat 
challenged the fee, and in an opinion filed May 30, 1997, this 
court invalidated it because the FCC had not adopted the 
signatory fee as a consequence of any identified "rulemaking 
proceedings or changes in law," a requisite for changes in 
regulatory fees under 47 U.S.C. s 159(b)(3). See Comsat, 
114 F.3d at 227-28. At that point, the FCC had already 
proposed retaining the signatory fee for 1997 in a March 5, 
1997 notice of proposed rulemaking. The FCC's final order, 
filed June 26, 1997, dropped the signatory fee, because of the 
judicial intervention, and put nothing in its stead. Noting our 
decision, the FCC said, "Accordingly, we will not, at this time, 
assess a fee to recover the costs of our regulatory activities in 
connection with Comsat's role as U.S. Signatory." 1997 
Order, 12 FCC Rcd at 17187. The Commission noted that 
those costs amounted to "approximately 7.8% of all interna-
tional costs." Id. at 17187 n.26. In the 1998 Order, the FCC 
made no attempt to recover these costs and did not discuss 
possible space station fees for Comsat, even though PanAm-
Sat argued in its comments that Comsat should not be 
exempt. See 1998 Order, 13 FCC Rcd at 19835-36 (discuss-
ing fees for geostationary satellites without mentioning any 
attempt to recoup signatory-related costs attributable to 
Comsat).

 PanAmSat argues that this court's decision in Comsat 
reopened the issue of Comsat's fees sufficiently to render a 
challenge to the 1998 Order timely. We said in Kennecott 
Utah Copper Corp. v. United States Dep't of Interior, 88 F.3d 
1191, 1214 (D.C. Cir. 1996), that judicial review of agency 

__________
 1 Even in its 1995 Order exempting Comsat the FCC noted that 
Comsat was escaping fees for its regulatory costs to the FCC. See 
1995 Order, 10 FCC Rcd at 13550 ("[W]e intend to explore other 
ways to recover the regulatory costs imposed on the Commission on 
behalf of Comsat's participation in the Intersat [sic] and Inmarsat 
programs.").

action can sometimes amount to a "constructive reopening" of 
a prior agency decision, where "[f]or us to foreclose review of 
the agency's [new] decision to adhere to the status quo ante 
under changed circumstances, on the ground that the agency 
had not evidenced a willingness to reconsider the issue, would 
be to deny the significance of our own earlier ruling." But 
we qualified the reopening concept by saying that it would not 
be available where the "parties had adequate notice of a 
forthcoming change that might alter their incentive to seek 
judicial review," id., and indeed found in that case that the 
"potential litigants were on notice by the petition for review" 
which led to the intervening change, id. at 1215.

 PanAmSat may have had adequate notice of Comsat's 
petition for review of the signatory fee. Certainly it had 
notice of the intervening decision in Comsat when the FCC 
issued its 1997 Order. But we need not decide whether the 
timing of our decision in Comsat was such that a challenge 
should have been brought to the 1997, and not the 1998, 
Order. In the 1997 Order the FCC itself made statements 
that kept the issue open enough for a challenge to the 1998 
Order.

 The FCC said in the 1997 Order that it would not "at this 
time, assess a fee to recover the costs of our regulatory 
activities in connection with Comsat's role as U.S. Signatory." 
1997 Order, 12 FCC Rcd at 17187 (emphasis added). We 
think this statement is most reasonably read as stating an 
intention by the FCC to hold its approach to recovery of costs 
from Comsat open, especially given "the entire context of the 
rulemaking," see National Ass'n of Reversionary Property 
Owners v. Surface Transp. Bd., 158 F.3d 135, 141 (D.C. Cir. 
1998) (quoting Public Citizen v. NRC, 901 F.2d 147, 150 (D.C. 
Cir. 1990)): the 1995 statement that the Commission would 
"explore other ways to recover the regulatory costs," 1995 
Order, 10 FCC Rcd at 13550, the 1996 imposition of the 
signatory fee, and the initial 1997 proposal (thwarted by our 
decision) to continue the signatory fee. With that back-
ground the Commission's statement that it would not seek to 

recover the costs "at this time," far from merely "reaffirming 
[the agency's] prior position," Kennecott, 88 F.3d at 1213, was 
a commitment to continue the quest for a solution. Accord-
ingly, we find PanAmSat's challenge to the 1998 Order timely 
and reach the merits of PanAmSat's attack on the exemption 
of Comsat from the regulatory fees under s 9.2

 The Commission's theory is that exemption is commanded 
by the statute's "plain legislative history," though not by the 
text itself. See Respondent's Br. at 24. We examine this 
theory under the standard principle that if Congress has 
spoken to the precise question at issue, we must "give effect 
to the unambiguously expressed intent of Congress," but if 
Congress has not, we defer to a permissible agency construc-
tion of the statute. Chevron U.S.A. Inc. v. NRDC, 467 U.S. 
837, 842-43 (1984).

 The statute itself seems to have no suggestion that Comsat 
should be exempt. Section 9 directs the Commission to 
"assess and collect regulatory fees to recover the costs of ... 
enforcement activities, policy and rulemaking activities, user 
information services, and international activities." 47 U.S.C. 
s 159(a)(1). Fees are derived from a number of "factors," 
including the number of Commission employees in various 
"bureaus," and "the benefits provided to the payor of the fee 
by the Commission's activities, including such factors as 
service area coverage, shared use versus exclusive use, and 
other factors that the Commission determines are necessary 
in the public interest." 47 U.S.C. s 159(b)(1)(A). If the 
Commission wants to adjust or amend the schedule of fees, it 
must satisfy certain preconditions. See Comsat, 114 F.3d at 
227-28. The statute then provides a starting schedule of 
fees, which includes a "space station" category, under which 
Congress assessed a fee "per operational station in geosynch-

__________
 2 PanAmSat has standing to challenge a decision to exempt 
Comsat from space station fees because Congress sets a fixed 
amount the FCC must recover through s 9 fees. Thus an exemp-
tion for Comsat from certain fees increases the amount that must 
be extracted from other regulatees, such as PanAmSat.

ronous orbit." 47 U.S.C. s 159(g) (Schedule of Regulatory 
Fees, Common Carrier Bureau).

 The Commission's invocation of legislative history of course 
presupposes some obscurity in the statute. "[W]e do not 
resort to legislative history to cloud a statutory text that is 
clear." Ratzlaf v. United States, 510 U.S. 135, 147-48 (1994); 
see also Sutton v. United Air Lines, Inc., 119 S. Ct. 2139, 
2146 (1999); Connecticut Nat'l Bank v. Germain, 503 U.S. 
249, 253-54 (1992); United States v. Bost, 87 F.3d 1333, 1336 
(D.C. Cir. 1996). It is most unclear to us where the neces-
sary statutory ambiguity lurks.

 The plain terms of s 9 have already been quoted; they 
clearly do not require an exemption for Comsat, and there is 
no obvious hook in the language on which to hang an exemp-
tion. Moreover, the Commission conceded in its 1995 Order 
that "regulatory costs [are] imposed on the Commission on 
behalf of Comsat's participation in the Intersat [sic] and 
Inmarsat programs." 1995 Order, at 13550. Thus Comsat's 
payment of regulatory fees for its space stations would serve 
s 9's general purpose of recovering the Commission's costs 
for its regulatory activities. And s 9 contains a category of 
"Exceptions" to the fee schedule, 47 U.S.C. s 159(h), saying 
that the fees should not apply to "(1) governmental entities or 
nonprofit entities; or (2) to amateur radio operator licenses 
under part 97 of the Commission's regulations." If Congress 
intended an exception for Comsat, we might expect to find it 
there.

 Further, the FCC's treatment of the analogous provision in 
s 8 argues for non-exemption. Section 8 calls for a fee for an 
"application for authority to launch and operate" for "space 
stations," 47 U.S.C. s 158(g) (Schedule of Application Fees, 
Common Carrier Services (16)(b)), and the Commission in 
1987 concluded that Comsat must pay such a fee when it 
participates in the launch and operation of stations in the 
Intelsat and Inmarsat systems. See 1987 Order, 2 FCC Rcd 
at 974 & n.226. It is hard to see why the "space station" 
application fee under s 8 covers Comsat, but the "space 

station" regulatory fee under s 9 does not. The Commis-
sion's reading of s 8 was in place when Congress enacted s 9.

 At oral argument the Commission cautioned that a parallel 
construction of the two sections would force the Commission 
to extract s 9 fees when, for example, Comsat and other U.S. 
companies use Canadian and Mexican satellites; according to 
Commission counsel, U.S. companies pay s 8 fees when ap-
plying to use foreign satellites. When pressed, however, 
counsel did not know whether such use of foreign satellites 
actually causes the Commission any regulatory burdens--a 
prerequisite for s 9 fees and a conceded reality for Comsat's 
participation in Intelsat and Inmarsat.

 Thus the statute plainly does not require--and may not 
permit--Comsat's exemption from space station regulatory 
fees. Nor would the legislative history change the result, 
assuming the statute to be ambiguous enough to allow its 
consideration. The Commission points to the Conference 
Report for the 1993 amendments, which explicitly incorporat-
ed by reference, "[t]o the extent applicable, the appropriate 
provisions of the House Report (H.R. Rep. 102-207)." See 
Conf. Rep. H. Rep. No. 213, 103d Cong., 1st Sess. 499 (1993). 
The latter explicated a virtually identical bill that passed the 
House in 1991 but failed to be enacted. The relevant passage 
of the incorporated report reads as follows:

 The Committee intends that [space station fees] be as-
 sessed on operators of U.S. facilities, consistent with 
 FCC jurisdiction. Therefore, these fees will apply only 
 to space stations directly licensed by the Commission 
 under Title III of the Communications Act. Fees will 
 not be applied to space stations operated by international 
 organizations subject to the International Organizations 
 Immunities Act, 22 U.S.C. s 288 et seq.
 
H.R. Rep. 102-207, at 26 (1991). In exempting Comsat from 
s 9 space station regulatory fees the Commission relied solely 
on this legislative history and on the fact that Intelsat and 
Inmarsat are both, by executive order, international organiza-
tions subject to the International Organizations Immunities 
Act. See 1995 Order, 10 FCC Rcd at 13550 & n.30.

 The legislative history does not seem to us anywhere near 
as conclusive as it did to the Commission. The 1991 report 
speaks of granting cost recovery authority "consistent with 
FCC jurisdiction" for "space stations directly licensed by the 
Commission under Title III of the Communications Act." 
H.R. Rep. 102-207, at 26. Comsat must seek FCC authoriza-
tion under Title III (i.e., "application for license," 47 U.S.C. 
s 309) for its launch and operation of Intelsat and Inmarsat 
satellites. See Statement of Policy Concerning Procedures 
Applicable to Comsat's Applying for Commission Authoriza-
tion to Participate in Certain Intelsat Activities, 46 FCC 2d 
338, 338 & n.2 (1974); see, e.g., Authority to Participate, 12 
FCC Rcd 15971, 15971 n.1 (1997). Thus imposing s 9 fees on 
Comsat is consistent with the FCC's Title III licensing juris-
diction. It was this precise rationale that led the FCC to 
include Comsat in the s 8 application fees. See 2 FCC Rcd 
at 974 & n.226.

 At oral argument the Commission attempted a delicate 
distinction between, on the one hand, applications for satellite 
licenses, and on the other hand, Comsat's applications for 
approvals of its participation in the launch and operation of 
Intelsat satellites. The Commission insisted that, even 
though it issues its approvals of the latter under the authority 
of 47 U.S.C. s 309, see Authority to Participate, 12 FCC Rcd 
at 15971 n.1, which relates exclusively to licensing, it does not 
"license" Intelsat satellites. But it seems perfectly reason-
able to say under these circumstances that the Commission 
"licenses" Comsat's operation of Intelsat satellites. Thus, the 
legislative history's embrace of fees for satellites "directly 
licensed by the Commission under Title III" seems reason-
ably to encompass Comsat.

 Even if we take the 1991 House report as gospel, the key 
passage seems most plausibly to leave Comsat subject to fees 
for the regulatory activity that it generates, and to exempt 

only organizations like Intelsat and Inmarsat themselves. 
Both organizations are covered by the International Organi-
zations Immunities Act, 22 U.S.C. s 288 et seq., and their 
exemption would be consistent with the many privileges, 
exemptions, and immunities such organizations enjoy. See, 
e.g., 22 U.S.C. s 288a(d) ("Insofar as concerns customs duties 
and internal-revenue taxes imposed upon or by reason of 
importation, and the procedures in connection therewith; the 
registration of foreign agents; and the treatment of official 
communications, the privileges, exemptions, and immunities 
to which international organizations shall be entitled shall be 
those accorded under similar circumstances to foreign gov-
ernments."). Comsat, on the other hand, has no claim to such 
privileges.

 Given the ambiguity of the legislative history, and more 
importantly the absence of any clear exemption in the statute, 
the FCC was mistaken in its conclusion that the statute 
compelled an exemption for Comsat. Neither the statute nor 
its legislative history speaks precisely to an exemption for 
Comsat. Perhaps there is some ambiguity in the coverage of 
the "space station" category in s 9, such that the Commission 
might "permissibly" read the statute as allowing a Comsat 
exemption. But the FCC reached its conclusion via a plain 
misreading of the statute, finding exemption compelled. "An 
agency action, however permissible as an exercise of discre-
tion, cannot be sustained 'where it is based not on the 
agency's own judgment but on an erroneous view of the 
law.' " Sea-Land Service, Inc. v. Department of Transporta-
tion, 137 F.3d 640, 646 (D.C. Cir. 1998) (quoting Prill v. 
NLRB, 755 F.2d 941, 947 (D.C. Cir. 1985)). We accordingly 
grant the petition and remand the case to the Commission for 
reconsideration of Comsat's exemption from the s 9 space 
station fees.

 Non-common Carrier International Circuits

 PanAmSat's second challenge is to the FCC's assessment 
of fees on PanAmSat for "international circuits." The statute 

explicitly covers such circuits. 47 U.S.C. s 159(g) (Schedule 
of Regulatory Fees, Common Carrier Bureau). Until 1997 
the FCC collected such fees only from common carriers, 
leaving PanAmSat off the hook. But in 1997 it extended the 
fees to non-common carriers. See 1997 Order, 12 FCC Rcd 
at 17188. This assessment persists in the 1998 Order.

 Responding to the Commission's invocation of the time bar 
implicit in the 60-day limit of 28 U.S.C. s 2344, PanAmSat 
argues that the Commission itself reopened the issue in 1998, 
by responding in detail to comments and by not relying on its 
prior resolution of the issue. We agree.

 The controlling principle is that if an agency's response to 
comments "explicitly or implicitly shows that the agency 
actually reconsidered the rule, the matter has been reopened 
and the time period for seeking judicial review begins anew." 
National Ass'n of Reversionary Property Owners, 158 F.3d 
at 141; see also Public Citizen, 901 F.2d at 150.

 Here we find that the FCC did reconsider the issue in 
adopting the final rule, and did not expressly reaffirm its 
prior position as if the matter were settled in 1997. Both 
findings are important. First, the 1998 Order states that "we 
[the FCC] proposed [in the NPRM] to again assess the 
bearer circuit fee." 1998 Order, 13 FCC Rcd at 19837. The 
Order then devotes five paragraphs to defending the fee 
against the various comments that were made, including 
PanAmSat's, and concludes by stating "we continue to believe 
that our regulation of these entities has sufficiently changed 
so that it is now appropriate for them to contribute to the 
recovery of Commission costs through payment of the bearer 
circuit fee." Id. at 19839.

 Moreover, the FCC did not suggest in 1998 that it had 
settled the matter conclusively in 1997. In a sense, then, the 
Commission's characterization of the petition for review as 
untimely invokes reasoning that it failed to make in its 

response to comments. We do not ordinarily consider agency 
reasoning that "appears nowhere in the [agency's] order." 
Graceba Total Communications, Inc. v. FCC, 115 F.3d 1038, 
1041 (D.C. Cir. 1997); see also SEC v. Chenery Corp., 332 
U.S. 194, 196 (1947). Our reopening analysis does not create 
a disincentive to an agency's responding to the substance of a 
renewed attack on a rule: without risking loss of the benefits 
of the 60-day rule, the Commission could have first relied on 
the fact that the matter was settled in 1997, and then 
discussed the continued justification of the fee. But it opted 
only for the latter, and in a manner that reasonably reads as 
a reopening. PanAmSat's claim is therefore not time-barred.

 The attack on the "international circuits" assessment has 
two elements. First, PanAmSat says that the "international 
circuit" category as created by Congress applies only to 
common carriers, which PanAmSat is not. Second, if the 
FCC has amended the fee schedule (which must be true if the 
first argument is sound), then it must justify the change on 
the basis of "changes in the nature of its services as a 
consequence of Commission rulemaking proceedings or 
changes in law," 47 U.S.C. s 159(b)(3); see also Comsat, 114 
F.2d at 227, which PanAmSat says the Commission has failed 
to do. We need not consider the first challenge: assuming in 
PanAmSat's favor that the "international circuit" category 
originally excluded non-common carriers, we find that the 
Commission's decision to include non-common carriers is jus-
tifiable on the basis of changes in the Commission's services 
that flow from earlier rulemakings.

 PanAmSat does not deny that regulatory changes have 
occurred in the services non-common carriers may offer. The 
most noteworthy development was progressive relaxation of a 
prior ban on interconnection between non-common carriers 
and the public switched telephone network. The Commission 
invoked this and other rulemaking changes in justifying the 
new fee assessment in its 1997 Order and represented that 
"the steady expansion of services offered by the non-common 
carrier satellite operators has greatly increased the need for 

our oversight of their commercial activities and imposed a 
greater burden on [Commission] staff and other resources." 
1997 Order, 12 FCC Rcd at 17189 & nn.30-32 (citing other 
rulemakings). The Commission reiterated this rationale in 
the 1998 Order, and noted that "Commission staff [have] also 
spent considerable time representing non-[common] carrier 
satellite operators in international forums," which corre-
sponds directly with one of the purposes of the regulatory 
fees, the recovery of costs for "international activities." 1998 
Order, 13 FCC Rcd at 19839; 47 U.S.C. s 159(a)(1).

 PanAmSat concedes that such changes may have "argu-
ably" increased the Commission's oversight responsibilities, 
but says that the increased costs to the FCC have not been 
enough to justify the fee changes, and that the fees from the 
common carriers suffice to cover costs. Another theme from 
PanAmSat is that deregulation (which has admittedly oc-
curred) does not logically entail an increase in regulatory 
costs for the Commission. The Commission's response is that 
deregulation has indeed entailed greater regulatory costs.

 This response, that deregulation has made the Commission 
busier than ever, might at first glance seem worthy of Sir 
Humphrey Appleby, hero of the comedy "Yes Minister": 
"Naturally, as an experienced civil servant, a proposal to 
reduce and simplify the administration of government con-
jured up in Humphrey's mind a picture of a large intake of 
new staff specifically to deal with the reductions." Jonathan 
Lynn and Antony Jay, eds., The Complete Yes Minister 113 
(1987). But it is not difficult to imagine deregulatory scenar-
ios that would in fact place greater burdens on the regulator. 
A deregulatory change that generates significant growth in 
both the number of providers and the array of satellite 
services they may offer (which are activities to be overseen by 
the agency), may decrease regulation per provider or per unit 
of activity and yet sharply increase total regulatory action. 
Given PanAmSat's grudging concession that the Commis-
sion's oversight responsibilities have "arguably" increased 
and no evidence that the Commission has been deceitful about 
its burdens, we find that the Commission has adequately 

pointed to regulatory changes and to apparently contributory 
changes in law. See Comsat, 114 F.3d at 227-28.

 * * *

 We grant the petition in part, remanding the case to the 
Commission for reconsideration of Comsat's exemption from 
s 9 space station fees. We deny the petition with respect to 
the assessment of international circuit fees on PanAmSat.

 So ordered.