**COMSAT CORPORATION, Petitioner,**

v.

**FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents.**

**No. 96–1325.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 18, 1997.

Decided May 30, 1997.

ular regulation into evidence. *See Lyons v. Barrazotto,* 667 A.2d 314, 324 (D.C.1995).

Daniel E. Troy, Washington, DC, argued the cause for petitioner, with whom Lawrence W. Secrest, III, William B. Baker, Warren Y. Zeger, Washington, DC, and Robert A. Mansbach, Bethesda, MD, were on the briefs. Richard E. Wiley, Washington, DC, entered an appearance.

C. Grey Pash, Jr., Counsel, Federal Communications Commission, Washington, DC, argued the cause for respondent, with whom William E. Kennard, General Counsel, Daniel M. Armstrong, Associate General Counsel, Joel I. Klein, Acting Assistant Attorney General, U.S. Department of Justice, Robert B. Nicholson and Andrea Limmer, Attorneys, were on the brief.

Before EDWARDS, Chief Judge, SILBERMAN and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Chief Judge:

Petitioner COMSAT, a common carrier offering a broad range of satellite-based services, requests review of the Federal Communications Commission ("FCC or the Commission") rulemaking amending its regulatory fee schedule. The FCC promulgated an amendment to the fee schedule charging COMSAT a "signatory fee" for costs allegedly incurred by the agency as a result of COMSAT's status as the United States' signatory to two international bodies, the International Telecommunications Satellite Organization and the International Mobile Satellite Organization (hereinafter referred to as the "Organizations"). Because we find that the FCC acted outside the scope of its statutory authority when it promulgated this amendment, we grant the petition for review.

First, we find that the statutory language of section 9 of the Communications Act of 1934, which provides that "[i]ncreases or decreases in fees made by amendments pursuant to this paragraph shall not be subject to judicial review," 47 U.S.C. § 159(b)(3) (1994), does not deprive this court of jurisdiction to review the Commission's action in this case. This language provides that there shall be no judicial review where the Commission has amended the statutory fee schedule pursuant to the terms of § 159(b)(3). However, there is no preclusion of judicial review where, as here, the Commission has acted outside the scope of its authority under § 159(b)(3). Thus, consideration of this court's jurisdiction merges with consideration of the question whether the Commission possessed the

requisite statutory authority to charge COMSAT a signatory fee.

Second, consistent with our finding of jurisdiction, we find that, on the merits, the Commission exceeded its statutory authority when it charged COMSAT a signatory fee. Section 159(b)(3) permits amendments to the statutory fee schedule where the "Commission determines that the Schedule requires amendment to comply with the requirements of paragraph (1)(A) [which mandates that the Commission allocate fees to cover the costs of certain regulatory activities in accord with the benefits provided to the payor and other factors that the Commission determines are in the public interest]." 47 U.S.C. § 159(b)(3). However, the next sentence of § 159(b)(3) states that, *"[i]n making such amendments,* the Commission shall add, delete, or reclassify services in the Schedule *to reflect additions, deletions, or changes in the nature of its services as a consequence of Commission rulemaking proceedings or changes in law." Id.* (emphasis added). This latter sentence clearly limits the Commission's authority to promulgate amendments under the first sentence. The Commission conceded at oral argument that the signatory fee was not imposed in response to any such "rulemaking proceeding[ ] or change[ ] in law." Thus, the Commission had no lawful basis for its signatory fee, for it was neither authorized nor justified by § 159(b)(3).Accordingly, we vacate the Commission's rule charging COMSAT signatory fees.

## I. BACKGROUND

### A. *COMSAT*

COMSAT, a private corporation formed pursuant to the Communications Satellite Act of 1962, *see* 47 U.S.C. §§ 701–44 (1994), serves by congressional designation as the United States' sole representative and signatory to the Organizations. Both Organizations are multinational and were created pursuant to international agreements for the purpose of establishing and operating worldwide satellite communications systems. The United States is a party to both Organizations through congressionally authorized Executive Agreements.

### B. *The Commission's Regulatory Fee Regime*

Congress has authorized the Commission to assess and collect two types of fees: *application fees,* which are not at issue here, and *regulatory fees.* Section 9 of the Communications Act of 1934 authorizes the Commission to collect regulatory fees "to recover the costs of ... enforcement activities, policy and rulemaking activities, user information services, and international activities." 47 U.S.C. § 159(a)(1) (1994). The revenues collected under this section should equal the amounts appropriated by Congress for that fiscal year for the performance of these activities. *See* 47 U.S.C. § 159(b)(1)(B) (1994).

Congress established an initial regulatory fee schedule under section 9 which did not include a charge for "signatory fees." By statute, the Commission must proportionally adjust the fee schedule to ensure that the total revenue generated by the fees satisfies the targets set by Congress in the appropriations acts. *See* 47 U.S.C. § 159(b)(2) (1994). Congress also gave the Commission the authority to amend the fee schedule where the "Commission determines that the Schedule requires amendment to comply with the requirements of paragraph (1)(A) [which mandates that the Commission allocate fees to cover the costs of certain regulatory activities in accord with the benefits provided to the payor and other factors that the Commission determines are in the public interest.]" 47 U.S.C. § 159(b)(3). However, the statute provides that, "[i]n making such amendments, the Commission shall add, delete, or reclassify services in the Schedule to reflect additions, deletions or changes in the nature of its services as a consequence of Commission rulemaking proceedings or changes in law." 47 U.S.C. § 159(b)(3).

### C. *The Commission's Decision to Charge COMSAT a "Signatory Fee"*

On April 15, 1996, in a notice of proposed rulemaking, the Commission proposed to amend the regulatory fee schedule under section 9 to create a new category of fees, the so-called "signatory fee." *See Assessment*

*and Collection of Regulatory Fees for Fiscal Year 1996,* 61 Fed.Reg. 16,432, 16,436 (1996). The Commission explained that, in fiscal year 1995, COMSAT had not been required to pay a "geosynchronous satellite regulatory fee" for its Organization satellites "because the legislative history of Section 9 states that regulatory fees should not be assessed upon space stations operated by international bodies." *Id.* The Commission indicated that the signatory fee, thus, was being proposed as an alternative means of recovering the regulatory costs incurred as a result of "COMSAT's participation in the [Organizations'] programs." *Id.*

COMSAT opposed the signatory fee proposal. It filed comments challenging the Commission's authority to create such a signatory fee and the methodology by which the Commission calculated the fee. *See* Comments of COMSAT Corporation, MD Docket No. 96–84 (Apr. 29, 1996), *reprinted in* J.A. 62. COMSAT argued that no change in circumstances or law had occurred to trigger the Commission's authority to amend the fee schedule and that section 9, which requires the Commission "to take into account factors that are reasonably related to the benefits provided to the payor of the fee by the Commission's activities ... and other factors that the Commission determines are necessary in the public interest," 47 U.S.C. § 159(b)(1)(A), did not authorize the Commission to create a signatory fee because the proposed fee was not "reasonably related" to "benefits" conferred on COMSAT by the Commission's activities since COMSAT's signatory status was conferred by Congress, and not by the agency. *See* Comments of COMSAT Corporation, MD Docket No. 96–84 (Apr. 29, 1996) at 6, 10, *reprinted in* J.A. 71, 75. COMSAT also argued that the proposed "signatory fee" could not be based on the agency activities cited by the Commission, because, to the extent these activities conferred any "benefits" on COMSAT, the associated regulatory costs were already recouped through the application fees and other regulatory fees that COMSAT pays to the Commission. *See id.* at 14, *reprinted in* J.A. 79.

The Commission rejected COMSAT's arguments in its final rule, concluding that the signatory fee classification "fully satisfies the statutory requirements in Section 9." *Assessment and Collection of Regulatory Fees for Fiscal Year 1996,* 61 Fed.Reg. 36,629, 36,635 (1996). The Commission said, "We also have no doubt that Comsat benefits significantly from its status as signatory and the regulatory oversight that is necessitated by that status. Therefore, taking into account these benefits, we perceive no public interest basis for relieving Comsat of the costs that the Commission incurs in regulating its activities." *Id.* at 36,635–36 (footnote omitted).

COMSAT paid the fees in full under protest. On September 10, 1996, COMSAT petitioned this court for review.

## II. ANALYSIS

### A. *The Jurisdiction of this Court Under Section 9 of the Communications Act*

■ As with most administrative agency decisions, we start with the assumption that there is a "strong presumption" of reviewability. *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 670, 106 S.Ct. 2133, 2135, 90 L.Ed.2d 623 (1986). Under the Administrative Procedure Act, "agency actions are judicially reviewable 'except to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law.'" *Natural Resources Defense Council, Inc. v. SEC,* 606 F.2d 1031, 1043 (D.C.Cir.1979) (quoting 5 U.S.C. § 701(a)). Neither exception is applicable here. As section 9 articulates standards that the Commission must follow in amending the statutory fee schedule, we can quickly dispense with the second exception to the presumption of judicial reviewability. *See Heckler v. Chaney,* 470 U.S. 821, 830, 105 S.Ct. 1649, 1654, 84 L.Ed.2d 714 (1985) (This exception "is applicable in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." (quotation omitted)).

We also find that the first exception to the presumption of judicial reviewability is inapplicable here, because the provision of the statute that limits judicial review is not appli-

cable to this case. *See Citizens To Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971) (There must be a "showing of clear and convincing evidence of a . . . legislative intent to restrict access to judicial review." (internal quotation omitted)). The statutory language of section 9 only provides that "[i]ncreases or decreases in fees made by amendments *pursuant to this paragraph* shall not be subject to judicial review." 47 U.S.C. § 159(b)(3) (emphasis added). Thus, the statute says that the courts may not review the Commission's actions where the Commission has acted within the scope of its authority under section 9. The no-review provision of section 9, accordingly, merges consideration of the legality of the Commission's action with consideration of this court's jurisdiction in cases in which the challenge to the Commission's action raises the question of the Commission's authority to enact a particular amendment. Where, as here, we find that the Commission has acted outside the scope of its statutory mandate, we also find that we have jurisdiction to review the Commission's action.

Our construction of section 9 does not strip the statute of meaning, for there are numerous amendments that could be made consonant with the terms of § 159(b)(3) that would not be subject to judicial review. For example, an amendment to increase the amount of an existing fee—for a statutorily permissible reason—would be covered by section 9. This case, however, does not present such a situation.

At oral argument, counsel for the FCC suggested that the no-review provision of section 9 could be read to shield from judicial review any Commission action purportedly taken pursuant to section 9. Thus, according to counsel, the Commission could impose a tax on an unregulated railroad or a tax on an individual for eating ice cream, so long as the FCC claimed to be acting under section 9. This is a preposterous position, one that we will not countenance. As this court said in *Railway Labor Executives' Ass'n. v. National Mediation Bd.,* 29 F.3d 655 (D.C.Cir.1994) *(en banc),* "it goes without saying that the bald assertion of power by [an] agency can-

not legitimize it." *Id.* at 669. "Unable to link its assertion of authority to any statutory provision, the [FCC's] position in this case amounts to the bare suggestion that it possesses *plenary* authority to act within a given area simply because Congress has endowed it with *some* authority to act in that area. We categorically reject that suggestion." *Id.* at 670.

B. *The Scope of the Commission's Authority to Amend the Regulatory Fee Schedule Under Section 9 of the Communications Act*

We are faced with the simple question of whether the Commission possessed the authority to institute a signatory fee under § 159(b)(3). Section 159(b)(3) permits amendments to the regulatory fee schedule adopted by Congress where the "Commission determines that the Schedule requires amendment to comply with the requirements of paragraph (1)(A) [which mandates that the Commission allocate fees to cover the costs of certain regulatory activities in accord with the benefits provided to the payor and other factors that the Commission determines are in the public interest]." 47 U.S.C. § 159(b)(3). The next sentence of § 159(b)(3), however, says that, *"[i]n making such amendments,* the Commission shall add, delete, or reclassify services in the Schedule *to reflect additions, deletions, or changes in the nature of its services as a consequence of Commission rulemaking proceedings or changes in law." Id.* (emphasis added). The second sentence, thus, limits the authority granted to the Commission under the first sentence. The Commission may amend the fee schedule in the circumstances articulated by the first sentence *only* where the requirements of the second sentence are met. This is clear, because the second sentence begins with the words "[i]n making such amendments," thus showing that the first and second sentences are not separate sources of authority for the promulgation of amendments.

■ In this case, counsel for the Commission conceded at oral argument that the signatory fee imposed on COMSAT was not charged pursuant to any rulemaking or

change in law. The Commission, thus, acknowledged that, when it charged COMSAT a signatory fee, it acted outside the scope of its statutory authority to amend the fee schedule under section 9. The Commission's amendment was neither authorized nor justified by § 159(b)(3). We therefore find that the disputed fee cannot survive this petition for review; accordingly, we hold the fee unlawful and set aside the action of the Commission. *See* 5 U.S.C. § 706(2)(C) (The reviewing court "shall hold unlawful and set aside agency action . . . in excess of statutory jurisdiction [and] authority.").

### III. CONCLUSION

We grant petitioner COMSAT's request for review and vacate the Commission's rule charging a signatory fee.