**PANAMSAT CORPORATION,
Petitioner,**

v.

**FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents.**

**BellSouth Wireless, Inc., Intervenor.**

**No. 98–1408.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 15, 1999.

Decided Dec. 21, 1999.

Henry Goldberg argued the cause for petitioner. With him on the briefs were Joseph A. Godles and W. Kenneth Ferree.

C. Grey Pash, Jr., Counsel, Federal Communications Commission, argued the cause for respondent. With him on the brief were Christopher J. Wright, General Counsel, Daniel M. Armstrong, Associate General Counsel, Joel I. Klein, Assistant Attorney General, U.S. Department of Justice, Catherine G. O'Sullivan and Nancy C. Garrison, Attorneys.

Before: WILLIAMS, ROGERS and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILLIAMS.

WILLIAMS, Circuit Judge:

Congress requires that the Federal Communications Commission collect fees to finance its regulatory activities. In 1985, as part of the Consolidated Omnibus Budget Reconciliation Act, it amended the Communications Act of 1934 by adding a section 8, 47 U.S.C. § 158, which created a schedule of "application fees" for regulatees to pay to the FCC. In 1993, again as part of the Omnibus Budget Reconciliation Act, it expanded FCC fee collection by adding a section 9, which mandated the

collection of "regulatory fees" to recover the costs of "enforcement activities, policy and rulemaking activities, user information services, and international activities." 47 U.S.C. § 159(a)(1).

PanAmSat Corporation, an operator of satellites for telecommunications purposes, petitions for review of two separate aspects of the FCC's 1998 assessment of regulatory fees. See *Assessment and Collection of Regulatory Fees for Fiscal Year 1998*, 13 FCC Rcd 19820 (1998) ("1998 Order"). Both challenges relate to the Commission's interpretation of § 9. In the first PanAmSat attacks the FCC's exemption of Comsat Corporation from "space station fees," 47 U.S.C. § 159(g), for satellites Comsat operates as part of the Intelsat and Inmarsat systems. In the second it challenges the FCC's assessment of fees on PanAmSat for "international circuits." *Id.*

Both challenges confront a jurisdictional problem. Although PanAmSat attacks a 1998 Order, the decisions it complains of are identical to the formulations reached by the Commission in its 1997 Order. See *Assessment and Collection of Regulatory Fees for Fiscal Year 1997*, 12 FCC Rcd 17161, 17187–89 (1997) ("1997 Order"). The statute authorizing judicial review states that petitions for review must be filed within 60 days of the final order, see 28 U.S.C. § 2344; PanAmSat's petition is timely for the 1998 Order but not for that of 1997. We assume without deciding that the clock does not automatically start fresh on each new annual iteration of an order that imposes burdens with respect to a specific year. Even with that assumption, PanAmSat has brought itself within standard exceptions to any inference of preclusion to be drawn from the 60–day limit. See *Independent Comm. Bankers of Am. v. Board of Governors of the Fed. Reserve Sys.*, 1999 U.S.App. LEXIS 28145, at *19 (D.C.Cir. Nov. 2, 1999) (noting that typical statutory review periods rarely contain an "explicit bar" to challenges brought after the time limit). Because the exceptions are different, we address the jurisdictional issue separately for each substantive challenge.

### Space Station Fees for Comsat

Comsat is a private corporation formed pursuant to the Communications Satellite Act of 1962. See 47 U.S.C. § 701 et seq. At Comsat's creation Congress designated it the United States's sole representative and signatory to the International Telecommunications Satellite Organization ("Intelsat"), 47 U.S.C. § 731, and later the International Maritime Satellite Organization ("Inmarsat"), 47 U.S.C. § 752; see also *COMSAT Corp. v. FCC*, 114 F.3d 223, 225 (D.C.Cir.1997). These organizations own satellites that are used by signatories, such as Comsat, to provide international communications. Comsat provides such services as a common carrier and is "fully subject to the provisions of title II and title III of [the Communications] Act," 47 U.S.C. § 741. Title II governs regulation of common carriers, 47 U.S.C. § 201 et seq.; Title III governs radio communication, 47 U.S.C. § 301 et seq. To participate in the launch of an Intelsat satellite, for example, Comsat must seek authority from the FCC pursuant to 47 U.S.C. § 309. See, e.g., *In the Matter of Comsat Corporation Application for authority to participate in a program for the construction of up to four Intelsat VIII satellites and to provide its authorized Intelsat services via these facilities*, 12 FCC Rcd 15971 (1997) ("*Authority to Participate*").

Until 1985 the FCC required (with limited exceptions) that international fixed satellite services be provided via the Intelsat system. In that year it authorized provision of separate international satellite services; in 1988 PanAmSat became the first U.S. provider of a separate system and it now operates its own worldwide fleet of satellites. Unlike Comsat, PanAmSat operates as a non-common carrier.

Both Comsat and PanAmSat pay § 8 application fees for space stations. 47 U.S.C. § 158. Such fees apply to those

who "launch and operate" space stations. 47 U.S.C. § 158(g) (Schedule of Application Fees, Common Carrier Services (16)(b)). PanAmSat launches and operates its own satellites, so it obviously must pay the fees; in 1987 the FCC concluded that Comsat must do so as well insofar as it "participate[s] in the construction, or in the launch and operation, of [a station in the Intelsat or Inmarsat system]." *In the Matter of Establishment of a Fee Collection Program to Implement the Provisions of the Consolidated Omnibus Budget Reconciliation Act of 1985*, 2 FCC Rcd 947, 974 & n.226 (1987) ("1987 Order"). But when Congress established regulatory fees for space stations in 1993 under § 9, the FCC concluded that Comsat was exempt from such fees for its Intelsat and Inmarsat space stations, even though companies like PanAmSat were required to pay the new § 9 fees. See 47 U.S.C. § 159(g) (Schedule of Regulatory Fees, Common Carrier Bureau); *Assessment and Collection of Regulatory Fees for Fiscal Year 1995*, 10 FCC Rcd 13512 (1995) ("1995 Order"). Comsat's exemption from these fees persists through the 1998 Order.

PanAmSat says that its challenge to the Comsat exemption is timely for two reasons. It argues first that an intervening decision of this circuit, *COMSAT Corp. v. FCC*, 114 F.3d 223 (D.C.Cir.1997), reopened the issue, and second that the FCC's 1997 decision, although deciding the issue for 1997, explicitly kept the issue open for the future.

The FCC exempted Comsat from space station fees back in 1995, but in 1996 it noted that Comsat was not being charged for the regulatory costs it imposed on the FCC.[1] This prompted the agency to adopt a "signatory fee" that applied to Comsat as the United States's signatory in organizations like Intelsat. See *COMSAT*, 114

F.3d at 225–26. Comsat challenged the fee, and in an opinion filed May 30, 1997, this court invalidated it because the FCC had not adopted the signatory fee as a consequence of any identified "rulemaking proceedings or changes in law," a requisite for changes in regulatory fees under 47 U.S.C. § 159(b)(3). See *COMSAT*, 114 F.3d at 227–28. At that point, the FCC had already proposed retaining the signatory fee for 1997 in a March 5, 1997 notice of proposed rulemaking. The FCC's final order, filed June 26, 1997, dropped the signatory fee, because of the judicial intervention, and put nothing in its stead. Noting our decision, the FCC said, "Accordingly, we will not, at this time, assess a fee to recover the costs of our regulatory activities in connection with Comsat's role as U.S. Signatory." 1997 Order, 12 FCC Rcd at 17187. The Commission noted that those costs amounted to "approximately 7.8% of all international costs." *Id.* at 17187 n. 26. In the 1998 Order, the FCC made no attempt to recover these costs and did not discuss possible space station fees for Comsat, even though PanAmSat argued in its comments that Comsat should not be exempt. See 1998 Order, 13 FCC Rcd at 19835–36 (discussing fees for geostationary satellites without mentioning any attempt to recoup signatory-related costs attributable to Comsat).

PanAmSat argues that this court's decision in *COMSAT* reopened the issue of Comsat's fees sufficiently to render a challenge to the 1998 Order timely. We said in *Kennecott Utah Copper Corp. v. United States Dep't of Interior*, 88 F.3d 1191, 1214 (D.C.Cir.1996), that judicial review of agency action can sometimes amount to a "constructive reopening" of a prior agency decision, where "[f]or us to foreclose review of the agency's [new] decision to adhere to the status quo ante under changed circumstances, on the ground that the agency had not evidenced a willingness to

---

**1.** Even in its 1995 Order exempting Comsat the FCC noted that Comsat was escaping fees for its regulatory costs to the FCC. See 1995 Order, 10 FCC Rcd at 13550 ("[W]e intend to

explore other ways to recover the regulatory costs imposed on the Commission on behalf of Comsat's participation in the Intersat [sic] and Inmarsat programs.").

reconsider the issue, would be to deny the significance of our own earlier ruling." But we qualified the reopening concept by saying that it would not be available where the "parties had adequate notice of a forthcoming change that might alter their incentive to seek judicial review," *id.*, and indeed found in that case that the "potential litigants were on notice by the petition for review" which led to the intervening change, *id.* at 1215.

■ PanAmSat may have had adequate notice of Comsat's petition for review of the signatory fee. Certainly it had notice of the intervening decision in *COMSAT* when the FCC issued its 1997 Order. But we need not decide whether the timing of our decision in *COMSAT* was such that a challenge should have been brought to the 1997, and not the 1998, Order. In the 1997 Order the FCC itself made statements that kept the issue open enough for a challenge to the 1998 Order.

The FCC said in the 1997 Order that it would not "*at this time,* assess a fee to recover the costs of our regulatory activities in connection with Comsat's role as U.S. Signatory." 1997 Order, 12 FCC Rcd at 17187 (emphasis added). We think this statement is most reasonably read as stating an intention by the FCC to hold its approach to recovery of costs from Comsat open, especially given "the entire context of the rulemaking," see *National Ass'n of Reversionary Property Owners v. Surface Transp. Bd.,* 158 F.3d 135, 141 (D.C.Cir. 1998) (quoting *Public Citizen v. NRC,* 901 F.2d 147, 150 (D.C.Cir.1990)): the 1995 statement that the Commission would "explore other ways to recover the regulatory costs," 1995 Order, 10 FCC Rcd at 13550, the 1996 imposition of the signatory fee, and the initial 1997 proposal (thwarted by our decision) to continue the signatory fee. With that background the Commission's statement that it would not seek to recover

the costs "at this time," far from merely "reaffirming [the agency's] prior position," *Kennecott,* 88 F.3d at 1213, was a commitment to continue the quest for a solution. Accordingly, we find PanAmSat's challenge to the 1998 Order timely and reach the merits of PanAmSat's attack on the exemption of Comsat from the regulatory fees under § 9.[2]

■ The Commission's theory is that exemption is commanded by the statute's "plain legislative history," though not by the text itself. See Respondent's Br. at 24. We examine this theory under the standard principle that if Congress has spoken to the precise question at issue, we must "give effect to the unambiguously expressed intent of Congress," but if Congress has not, we defer to a permissible agency construction of the statute. *Chevron U.S.A. Inc. v. NRDC,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

■ The statute itself seems to have no suggestion that Comsat should be exempt. Section 9 directs the Commission to "assess and collect regulatory fees to recover the costs of ... enforcement activities, policy and rulemaking activities, user information services, and international activities." 47 U.S.C. § 159(a)(1). Fees are derived from a number of "factors," including the number of Commission employees in various "bureaus," and "the benefits provided to the payor of the fee by the Commission's activities, including such factors as service area coverage, shared use versus exclusive use, and other factors that the Commission determines are necessary in the public interest." 47 U.S.C. § 159(b)(1)(A). If the Commission wants to adjust or amend the schedule of fees, it must satisfy certain preconditions. See *COMSAT,* 114 F.3d at 227–28. The statute then provides a starting schedule of fees, which includes a "space station" cate-

---

2. PanAmSat has standing to challenge a decision to exempt Comsat from space station fees because Congress sets a fixed amount the FCC must recover through § 9 fees. Thus an exemption for Comsat from certain fees increases the amount that must be extracted from other regulatees, such as PanAmSat.

gory, under which Congress assessed a fee "per operational station in geosynchronous orbit." 47 U.S.C. § 159(g) (Schedule of Regulatory Fees, Common Carrier Bureau).

■ The Commission's invocation of legislative history of course presupposes some obscurity in the statute. "[W]e do not resort to legislative history to cloud a statutory text that is clear." *Ratzlaf v. United States*, 510 U.S. 135, 147–48, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994); see also *Sutton v. United Air Lines, Inc.*, —— U.S. ——, ——, 119 S.Ct. 2139, 2146, 144 L.Ed.2d 450 (1999); *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992); *United States v. Bost*, 87 F.3d 1333, 1336 (D.C.Cir.1996). It is most unclear to us where the necessary statutory ambiguity lurks.

The plain terms of § 9 have already been quoted; they clearly do not *require* an exemption for Comsat, and there is no obvious hook in the language on which to hang an exemption. Moreover, the Commission conceded in its 1995 Order that "regulatory costs [are] imposed on the Commission on behalf of Comsat's participation in the Intersat [sic] and Inmarsat programs." 1995 Order, at 13550. Thus Comsat's payment of regulatory fees for its space stations would serve § 9's general purpose of recovering the Commission's costs for its regulatory activities. And § 9 contains a category of "Exceptions" to the fee schedule, 47 U.S.C. § 159(h), saying that the fees should not apply to "(1) governmental entities or nonprofit entities; or (2) to amateur radio operator licenses under part 97 of the Commission's regulations." If Congress intended an exception for Comsat, we might expect to find it there.

Further, the FCC's treatment of the analogous provision in § 8 argues for non-exemption. Section 8 calls for a fee for an "application for authority to launch and operate" for "space stations," 47 U.S.C. § 158(g) (Schedule of Application Fees, Common Carrier Services (16)(b)), and the Commission in 1987 concluded that Comsat must pay such a fee when it participates in the launch and operation of stations in the Intelsat and Inmarsat systems. See 1987 Order, 2 FCC Rcd at 974 & n.226. It is hard to see why the "space station" application fee under § 8 covers Comsat, but the "space station" regulatory fee under § 9 does not. The Commission's reading of § 8 was in place when Congress enacted § 9.

At oral argument the Commission cautioned that a parallel construction of the two sections would force the Commission to extract § 9 fees when, for example, Comsat and other U.S. companies use Canadian and Mexican satellites; according to Commission counsel, U.S. companies pay § 8 fees when applying to use foreign satellites. When pressed, however, counsel did not know whether such use of foreign satellites actually causes the Commission any regulatory burdens—a prerequisite for § 9 fees and a conceded reality for Comsat's participation in Intelsat and Inmarsat.

Thus the statute plainly does not require—and may not permit—Comsat's exemption from space station regulatory fees. Nor would the legislative history change the result, assuming the statute to be ambiguous enough to allow its consideration. The Commission points to the Conference Report for the 1993 amendments, which explicitly incorporated by reference, "[t]o the extent applicable, the appropriate provisions of the House Report (H.R. Rep. 102–207)." See Conf. Rep. H. Rep. No. 213, 103d Cong., 1st Sess. 499 (1993). The latter explicated a virtually identical bill that passed the House in 1991 but failed to be enacted. The relevant passage of the incorporated report reads as follows:

The Committee intends that [space station fees] be assessed on operators of U.S. facilities, consistent with FCC jurisdiction. Therefore, these fees will apply only to space stations directly li-

censed by the Commission under Title III of the Communications Act. Fees will not be applied to space stations operated by international organizations subject to the International Organizations Immunities Act, 22 U.S.C. § 288 et seq.

H.R. Rep. 102–207, at 26 (1991). In exempting Comsat from § 9 space station regulatory fees the Commission relied solely on this legislative history and on the fact that Intelsat and Inmarsat are both, by executive order, international organizations subject to the International Organizations Immunities Act. See 1995 Order, 10 FCC Rcd at 13550 & n.30.

The legislative history does not seem to us anywhere near as conclusive as it did to the Commission. The 1991 report speaks of granting cost recovery authority "consistent with FCC jurisdiction" for "space stations directly licensed by the Commission under Title III of the Communications Act." H.R. Rep. 102–207, at 26. Comsat must seek FCC authorization under Title III (i.e., "application for license," 47 U.S.C. § 309) for its launch and operation of Intelsat and Inmarsat satellites. See *Statement of Policy Concerning Procedures Applicable to Comsat's Applying for Commission Authorization to Participate in Certain Intelsat Activities,* 46 FCC 2d 338, 338 & n. 2 (1974); see, e.g., *Authority to Participate,* 12 FCC Rcd 15971, 15971 n.1 (1997). Thus imposing § 9 fees on Comsat is consistent with the FCC's Title III licensing jurisdiction. It was this precise rationale that led the FCC to include Comsat in the § 8 application fees. See 2 FCC Rcd at 974 & n.226.

At oral argument the Commission attempted a delicate distinction between, on the one hand, applications for satellite licenses, and on the other hand, Comsat's applications for approvals of its participation in the launch and operation of Intelsat satellites. The Commission insisted that, even though it issues its approvals of the latter under the authority of 47 U.S.C. § 309, see *Authority to Participate,* 12

FCC Rcd at 15971 n.1, which relates exclusively to licensing, it does not "license" Intelsat satellites. But it seems perfectly reasonable to say under these circumstances that the Commission "licenses" Comsat's operation of Intelsat satellites. Thus, the legislative history's embrace of fees for satellites "directly licensed by the Commission under Title III" seems reasonably to encompass Comsat.

Even if we take the 1991 House report as gospel, the key passage seems most plausibly to leave Comsat subject to fees for the regulatory activity that it generates, and to exempt only *organizations* like Intelsat and Inmarsat themselves. Both organizations are covered by the International Organizations Immunities Act, 22 U.S.C. § 288 et seq., and their exemption would be consistent with the many privileges, exemptions, and immunities such organizations enjoy. See, e.g., 22 U.S.C. § 288a(d) ("Insofar as concerns customs duties and internal-revenue taxes imposed upon or by reason of importation, and the procedures in connection therewith; the registration of foreign agents; and the treatment of official communications, the privileges, exemptions, and immunities to which international organizations shall be entitled shall be those accorded under similar circumstances to foreign governments."). Comsat, on the other hand, has no claim to such privileges.

■ Given the ambiguity of the legislative history, and more importantly the absence of any clear exemption in the statute, the FCC was mistaken in its conclusion that the statute compelled an exemption for Comsat. Neither the statute nor its legislative history speaks precisely to an exemption for Comsat. Perhaps there is some ambiguity in the coverage of the "space station" category in § 9, such that the Commission might "permissibly" read the statute as allowing a Comsat exemption. But the FCC reached its conclusion via a plain misreading of the statute, finding exemption

compelled. "An agency action, however permissible as an exercise of discretion, cannot be sustained 'where it is based not on the agency's own judgment but on an erroneous view of the law.'" *Sea-Land Service, Inc. v. Department of Transportation,* 137 F.3d 640, 646 (D.C.Cir.1998) (quoting *Prill v. NLRB,* 755 F.2d 941, 947 (D.C.Cir.1985)). We accordingly grant the petition and remand the case to the Commission for reconsideration of Comsat's exemption from the § 9 space station fees.

### Non-common Carrier International Circuits

PanAmSat's second challenge is to the FCC's assessment of fees on PanAmSat for "international circuits." The statute explicitly covers such circuits. 47 U.S.C. § 159(g) (Schedule of Regulatory Fees, Common Carrier Bureau). Until 1997 the FCC collected such fees only from common carriers, leaving PanAmSat off the hook. But in 1997 it extended the fees to non-common carriers. See 1997 Order, 12 FCC Rcd at 17188. This assessment persists in the 1998 Order.

█ Responding to the Commission's invocation of the time bar implicit in the 60–day limit of 28 U.S.C. § 2344, PanAmSat argues that the Commission itself reopened the issue in 1998, by responding in detail to comments and by not relying on its prior resolution of the issue. We agree.

█ The controlling principle is that if an agency's response to comments "explicitly or implicitly shows that the agency actually reconsidered the rule, the matter has been reopened and the time period for seeking judicial review begins anew." *National Ass'n of Reversionary Property Owners,* 158 F.3d at 141; see also *Public Citizen,* 901 F.2d at 150.

Here we find that the FCC did reconsider the issue in adopting the final rule, and did not expressly reaffirm its prior position as if the matter were settled in 1997. Both findings are important. First, the 1998 Order states that "we [the FCC] proposed [in the NPRM] to again assess the bearer circuit fee." 1998 Order, 13 FCC Rcd at 19837. The Order then devotes five paragraphs to defending the fee against the various comments that were made, including PanAmSat's, and concludes by stating "we continue to believe that our regulation of these entities has sufficiently changed so that it is now appropriate for them to contribute to the recovery of Commission costs through payment of the bearer circuit fee." *Id.* at 19839.

█ Moreover, the FCC did not suggest in 1998 that it had settled the matter conclusively in 1997. In a sense, then, the Commission's characterization of the petition for review as untimely invokes reasoning that it failed to make in its response to comments. We do not ordinarily consider agency reasoning that "appears nowhere in the [agency's] order." *Graceba Total Communications, Inc. v. FCC,* 115 F.3d 1038, 1041 (D.C.Cir.1997); see also *SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). Our reopening analysis does not create a disincentive to an agency's responding to the substance of a renewed attack on a rule: without risking loss of the benefits of the 60–day rule, the Commission could have first relied on the fact that the matter was settled in 1997, and then discussed the continued justification of the fee. But it opted only for the latter, and in a manner that reasonably reads as a reopening. PanAmSat's claim is therefore not time-barred.

█ The attack on the "international circuits" assessment has two elements. First, PanAmSat says that the "international circuit" category as created by Congress applies only to common carriers, which PanAmSat is not. Second, if the FCC has amended the fee schedule (which must be true if the first argument is sound), then it must justify the change on the basis of "changes in the nature of its services as a consequence of Commission

rulemaking proceedings or changes in law," 47 U.S.C. § 159(b)(3); see also *COMSAT*, 114 F.3d at 227, which PanAmSat says the Commission has failed to do. We need not consider the first challenge: assuming in PanAmSat's favor that the "international circuit" category originally excluded non-common carriers, we find that the Commission's decision to include non-common carriers is justifiable on the basis of changes in the Commission's services that flow from earlier rulemakings.

PanAmSat does not deny that regulatory changes have occurred in the services non-common carriers may offer. The most noteworthy development was progressive relaxation of a prior ban on interconnection between non-common carriers and the public switched telephone network. The Commission invoked this and other rulemaking changes in justifying the new fee assessment in its 1997 Order and represented that "the steady expansion of services offered by the non-common carrier satellite operators has greatly increased the need for our oversight of their commercial activities and imposed a greater burden on [Commission] staff and other resources." 1997 Order, 12 FCC Rcd at 17189 & nn.30–32 (citing other rulemakings). The Commission reiterated this rationale in the 1998 Order, and noted that "Commission staff [have] also spent considerable time representing non-[common] carrier satellite operators in international forums," which corresponds directly with one of the purposes of the regulatory fees, the recovery of costs for "international activities." 1998 Order, 13 FCC Rcd at 19839; 47 U.S.C. § 159(a)(1).

PanAmSat concedes that such changes may have "arguably" increased the Commission's oversight responsibilities, but says that the increased costs to the FCC have not been enough to justify the fee changes, and that the fees from the common carriers suffice to cover costs. Another theme from PanAmSat is that *deregulation* (which has admittedly occurred) does not logically entail an increase in regulatory costs for the Commission. The Commission's response is that deregulation has indeed entailed greater regulatory costs.

This response, that deregulation has made the Commission busier than ever, might at first glance seem worthy of Sir Humphrey Appleby, hero of the comedy "Yes Minister": "Naturally, as an experienced civil servant, a proposal to reduce and simplify the administration of government conjured up in Humphrey's mind a picture of a large intake of new staff specifically to deal with the reductions." Jonathan Lynn and Antony Jay, eds., The Complete Yes Minister 113 (1987). But it is not difficult to imagine deregulatory scenarios that would in fact · place greater burdens on the regulator. A deregulatory change that generates significant growth in both the number of providers and the array of satellite services they may offer (which are activities to be overseen by the agency), may decrease regulation per provider or per unit of activity and yet sharply increase total regulatory action. Given PanAmSat's grudging concession that the Commission's oversight responsibilities have "arguably" increased and no evidence that the Commission has been deceitful about its burdens, we find that the Commission has adequately pointed to regulatory changes and to apparently contributory changes in law. See *COMSAT*, 114 F.3d at 227–28.

\* \* \*

We grant the petition in part, remanding the case to the Commission for reconsideration of Comsat's exemption from § 9 space station fees. We deny the petition with respect to the assessment of international circuit fees on PanAmSat.

*So ordered.*