COMSAT CORPORATION, Petitioner,

v.

FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents.

PanAmSat Corporation, Intervenor.

No. 00–1458.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 14, 2002.

Decided March 22, 2002.

Lawrence W. Secrest, III argued the cause for petitioner. With him on the briefs were William B. Baker, Daniel E. Troy, Howard D. Polsky and Robert A. Mansbach. Warren Y. Zeger entered an appearance.

C. Grey Pash, Jr., Counsel, Federal Communications Commission, argued the cause for respondents. With him on the brief were Jane E. Mago, General Counsel, Daniel M. Armstrong, Associate General Counsel, FCC, and Charles A. James, Assistant Attorney General, Catherine G. O'Sullivan and Andrea Limmer, Attorneys, U.S. Department of Justice.

Henry Goldberg and Joseph A. Godles were on the brief for intervenor. W. Kenneth Ferree entered an appearance.

Before: SENTELLE and ROGERS, Circuit Judges, and WILLIAMS, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge WILLIAMS.

STEPHEN F. WILLIAMS, Senior Circuit Judge:

Under § 9 of the Communications Act of 1934, Congress requires the Federal Communications Commission to "assess and collect regulatory fees to recover the costs of ... enforcement activities, policy and rulemaking activities, user information services, and international activities." 47 U.S.C. § 159(a)(1). In executing this mandate, the Commission collects fees accord-

ing to the Schedule of Regulatory Fees found at 47 C.F.R. § 1.1156. The statute authorizes the Commission to adjust these fees annually to reflect changes in operating costs or in the regulatory "services" it provides. 47 U.S.C. §§ 159(b)(2) & (3); see also *id.* § 159(g) (showing original fee schedule prior to agency amendment).

Until 1995, the Commission exempted petitioner COMSAT from the § 9 regulatory fees charged to satellite service providers for each "space station" in operation. See Report and Order, *Assessment and Collection of Regulatory Fees for Fiscal Year 1995,* 10 FCC Rcd 13512, 13550 ¶ 110, 1995 WL 370427 (1995) ("1995 Order"). The exemption arose from COMSAT's status as the United States signatory to the International Telecommunications Satellite Organization ("Intelsat"), which was formed via intergovernmental treaty and is immune from governmental regulation. See *PanAmSat Corp. v. FCC,* 198 F.3d 890, 896 (D.C.Cir. 1999); 22 U.S.C. § 288 note (Public International Organizations Entitled to Enjoy Certain Privileges, Exemptions, and Immunities); *id.* § 288a(b) (establishing immunity for certain international organizations).

COMSAT's exemption from space station fees naturally inhibited the Commission in fulfilling its congressional mandate to recover all regulatory costs. See, e.g., *COMSAT Corp. v. FCC,* 114 F.3d 223, 226 (D.C.Cir.1997) ("*COMSAT I*"); see also 1995 Order, 10 FCC Rcd at 13550 ¶ 110 (expressing intention "to explore other ways to recover the regulatory costs imposed on the Commission" by COMSAT's activities). The Commission therefore attempted to institute a special "signatory fee" for COMSAT in 1996. *COMSAT I,* 114 F.3d at 225–26; see also Report and Order, *Assessment and Collection of Regulatory Fees for Fiscal Year 1996,* 11 FCC Rcd 18774, 18787–91 ¶ ¶ 37–47, 1996 WL

425068 (1996) ("1996 Order"). We held in *COMSAT I,* however, that the signatory fee exceeded the Commission's authority to amend the fee schedule under § 159(b)(3) because it was not imposed "pursuant to any rulemaking or change in law." *COMSAT I,* 114 F.3d at 227–28. We vacated that portion of the 1996 Order, *id.* at 228, and the Commission subsequently dropped the signatory fee in future rulemakings, *PanAmSat,* 198 F.3d at 893; see Report and Order, *Assessment and Collection of Regulatory Fees for Fiscal Year 1997,* 12 FCC Rcd 17161, 17186–87 ¶ 65, 1997 WL 352363 (1997) (declining to recover signatory costs); see also Report and Order, *Assessment and Collection of Regulatory Fees for Fiscal Year 1998,* 13 FCC Rcd 19820, 19835–36 ¶ ¶ 50–53 (1998) (not mentioning signatory costs).

In 1998, PanAmSat, a competitor of COMSAT and intervenor in this case, sought review of the Commission's exemption of COMSAT from space station fees. See *PanAmSat,* 198 F.3d at 891–92. We held that the language of § 9 made "no suggestion that Comsat should be exempt," and that requiring COMSAT's payment of regulatory fees "would serve § 9's general purpose of recovering the Commission's costs for its regulatory activities." *Id.* at 894. We also noted thatCOMSAT was already subject to regulatory fees under § 8 for "launch and operation of stations," *id.* at 895, and that the regulatory immunity granted to Intelsat was "most plausibly" confined to it alone (i.e., it did not extend to COMSAT), *id.* at 896. We therefore remanded to the Commission for reconsideration of the exemption. *Id.* at 898.

In its 2000 Order, citing our decision in *PanAmSat* and Congress's March 2000 enactment of the Open Market Reorganization for the Betterment of International Telecommunications Act ("ORBIT"), Pub

L. No. 106–180, 114 Stat. 48 (2000), the Commission determined that COMSAT was subject to space station fees under § 9. Report and Order, *Assessment and Collection of Regulatory Fees for Fiscal Year 2000,* 15 FCC Rcd 14478, 14485–90 ¶ ¶ 17–27, 2000 WL 913658 (2000) ("2000 Order"). It then assessed COMSAT's § 9 space station fee at $1,609,050—calculated as $94,650 for each of its 17 geosynchronous space stations. See *id.* at 14507 (schedule of regulatory fees). COMSAT now brings this petition for review.

\* \* \*

We review the Commission's determination to impose § 9 space station fees on COMSAT under the familiar standard of *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Our inquiry here, however, is substantially limited by *PanAmSat*'s holding that the statute did not "compel[ ] an exemption for Comsat" from § 9 regulatory fees. See *PanAmSat,* 198 F.3d at 896.

COMSAT attempts to limit *PanAmSat,* characterizing the case as only foreclosing its claims for "legal immunity" under the Intelsat treaty. COMSAT contends that the scope of § 9 more generally was not in issue in *PanAmSat,* and is thus a matter of first impression. This reading of *PanAmSat* strikes us as unconvincing. The language there addressed the issue of COMSAT's exemption from § 9 space station fees quite generally, and was not confined to only whether COMSAT had legal immunity arising from its relationship to Intelsat. For example, we broadly held that "the statute plainly does not require— and may not permit—Comsat's exemption from space station regulatory fees," *id.* at 895, that "the legislative history's embrace of fees for satellites 'directly licensed by the Commission under Title III' seems reasonably to encompass Comsat," *id.* at 896, and that "the FCC [at the time] was

mistaken in its conclusion that the statute compelled an exemption for Comsat," *id.* Indeed, the *PanAmSat* opinion referred to the Intelsat treaty only as an aid to interpreting the statute and its legislative history.

◼ COMSAT is correct, however, that *PanAmSat* left open the possibility that there might be "some ambiguity in the coverage of the 'space station' category in § 9, such that the Commission might 'permissibly' read the statute as allowing a Comsat exemption." *Id.* But assuming there is enough ambiguity in § 9's "space station" category to *permit* the Commission to fashion an exemption for COMSAT, we cannot find the Commission's refusal to find an exemption unreasonable. See *Chevron,* 467 U.S. at 843–44, 104 S.Ct. at 2781–83. Unlike other foreign-licensed satellites, COMSAT clearly generates significant regulatory costs through its signatory activities, see, e.g., 1996 Order, 11 FCC Rcd at 18790 ¶ 45, and COMSAT historically has not paid for these costs. In light of § 9's policy favoring the recovery of regulatory costs, the Commission has good reason for forcing COMSAT to bear its "proportionate share of the [space station] fees." 2000 Order, 15 FCC Rcd at 14489 ¶ 24. Furthermore, the previously unrecoverable costs have been borne by COMSAT's competitors. See 1996 Order, 11 FCC Rcd at 18790 ¶ 46 (demonstrating that if signatory costs were recovered, the Commission could lower the § 9 space station fee). Clearly, the Commission might reasonably endeavor to prevent such cross-subsidization.

In response, COMSAT first argues that *COMSAT I* precludes the Commission from recovering signatory-related costs. But *COMSAT I* did not so hold. It stands only for the narrow proposition that under the procedural requirements of the Communications Act, the Commission may not

impose new fee structures absent a new "rulemaking or change in law." *COMSAT I*, 114 F.3d at 227–28; see also *PanAmSat*, 198 F.3d at 894–95. Nothing in *COMSAT I* prevents the Commission from recovering its signatory-related costs through proper application of its existing § 9 fee structure.

COMSAT next argues that the Commission's decision is unreasonable because the original statutory fee schedule lists the "space station category" with a parenthetical reference that is inapplicable to the licensing of Intelsat satellites:

> Space Station (per operational station in geosynchronous orbit) (*47 C.F.R. Part 25*).

47 U.S.C. § 159(g) (emphasis added). Since Intelsat satellites are not regulated under that section of the regulations, see 2000 Order, 15 FCC Rcd at 14487 ¶ 21, COMSAT argues that it cannot be subject to § 9 space station fees. We disagree. The Commission views the parenthetical as nothing more than a marker used by Congress to aid the Commission in understanding the schedule; this is neither precluded by the language nor unreasonable. See *Chevron*, 467 U.S. at 843–44, 104 S.Ct. at 2781–83. And the Commission's conduct thus far has been consistent with this view; the agency's annually amended schedule at 47 C.F.R. § 1.1156 has never mentioned the marker. See 47 C.F.R. § 1.1156 (1999); 47 C.F.R. § 1.1156 (1998); 47 C.F.R. § 1.1156 (1997); 47 C.F.R. § 1.1156 (1996); 47 C.F.R. § 1.1156 (1995). The Commission perhaps could have interpreted the parenthetical as limiting the category to exclusively those space stations regulated under 47 C.F.R. Part 25, but that possibility does not render the opposite view unreasonable. As the Commission explained in the Order, § 9's "primary mandate is for the Commission to recover the costs of its regulatory activities." 2000 Order, 15 FCC Rcd at 14487

¶ 22; see also 47 U.S.C. § 159(a). The Commission's interpretation of the parenthetical facilitates fulfillment of this mandate; COMSAT's does not.

■ Aside from the question whether the Commission can impose space station fees on COMSAT at all, COMSAT also challenges the amount charged. Because it only uses 17% of the transponder capacity of the Intelsat system, see COMSAT Brief at 54, COMSAT contends that its space station fee should be prorated accordingly. But we again cannot find the Commission's rejection of this proposal unreasonable. The Commission has previously rejected suggestions to assess space station fees "on the number of transponders used rather than the number of space segments." 2000 Order, 15 FCC Rcd at 14490 ¶ 26 (citing 1995 Order, 10 FCC Rcd at 13550–51 ¶ 111). The Commission has also noted that assessing fees per satellite is more consistent with the Congress's original schedule, see 47 U.S.C. § 159(g) (establishing original schedule that assessed fees "per operational station"), and is apparently less administratively burdensome on the Commission and regulatees, see 1995 Order, 10 FCC Rcd at 13550–51 ¶ 111. Furthermore, the Commission has maintained that the costs associated with regulating satellite systems are reasonably related to the number of operational satellites. 1995 Order, 10 FCC Rcd at 13550–51 ¶ 111. As COMSAT offers no evidence demonstrating that regulatory costs are generally more closely related to the number of transponders than to the number of satellites, we must reject the request to mandate its proration theory. See also *id.* (noting that commenter "provided ... no demonstrable evidence that the costs of regulating the various satellite systems is [sic] more closely related to the number of transponders that a satellite carries than to the total number of operational satellites").

While we reject COMSAT's proration argument, we do not suggest that the fees imposed on COMSAT were well apportioned. Indeed, the $1.6 million in fees assessed to COMSAT seem to bear no relation to the signatory-related costs that the Commission identified COMSAT as having created and that it has said it wishes to recover. Signatory-related costs apparently amounted to only $233,425 in 1996,[1] and although the record lacks reported figures for 2000, an extrapolation on the basis of the change in the regular fee per satellite would yield an estimate for Intelsat signatory-related costs in 2000 of about $442,000, only about a quarter of the fees actually assessed.[2]

We do not reach this issue, however, because it was not raised on this appeal. Indeed it appears that the Commission was and perhaps remains willing to consider a request for a fee reduction on this ground. It said in the 2000 Order that reductions of fees were "granted on a case-by-case basis" and that COMSAT remains "free to submit such a request." 2000 Order, 15 FCC Rcd at 14490 ¶ 27 (noting that the Commission "express[es] no view in this rulemaking proceeding whether such a reduction in fees should be granted"); see also 47 C.F.R. § 1.1166 (establishing procedures for requesting fee waivers or reductions).

Since § 9 of the statute as interpreted in *PanAmSat* is sufficient to justify the Commission's actions, we need not reach issues raised by the Commission's ancillary reliance on ORBIT.

\* \* \*

COMSAT's petition for review is

*Denied.*

---

1. In its 1996 Order, FCC estimated that signatory-related costs amounted to 14.7% of "the costs attributable to space station regulatory oversight ($3,175,850)." 1996 Order, 11 FCC Rcd at 18790 ¶ 45. The signatory-related costs for 1996 were thus $466,850. However, since COMSAT is signatory to two separate international organizations (Intelsat and the International Mobile Satellite Organization), the Commission divided that figure by two. See *id.* at 18787–88 ¶ 37, 18790 ¶ 45; see also Notice of Proposed Rulemaking, *Assessment and Collection of Regulatory Fees for Fiscal Year 1996*, 11 FCC Rcd 16515, 16528 ¶ 46 (1996) (making a similar signatory-related cost calculation, albeit with slightly lower figures). For reasons not disclosed by the parties, it appears that only fees charged with reference to Intelsat satellites are before us.

2. According to the 2000 Order, regulatory costs associated with (geosynchronous) space stations in 2000 are estimated at $6,010,513. See 2000 Order at 14532 attachment C. (Here, we use the same figure corresponding to the "Pro–Rated Revenue Requirement" for "Space Stations (Geosynchronous)" as in the 1996 Order.) Assuming that signatory costs remained at 14.7% of total space station regulatory costs as in 1996, see 1996 Order, 15 FCC Rcd at 18790 ¶ 45, signatory costs in 2000 were approximately $883,545. Again, because COMSAT is signatory to two organizations, *id.*, the Commission would presumably divide this figure by two to yield $441,773.